UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
PRASANNA GOONEWARDENA,

                        Plaintiff,                    **MEMORANDUM & ORDER**
                                                                 18-CV-00029 (MKB)

                            v.

FORSTER & GARBUS LLP, AMY GAVLICK,
RONALD FORSTER, MARK GARBUS,
EDWARD KLEIN, and JOEL LEIDERMAN,

                        Defendants.
---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Prasanna Goonewardena, proceeding *pro se*, commenced the above-captioned action on January 3, 2018 against Defendants Forster & Garbus LLP ("F&G"), Amy Gavlick, Ronald Forster, Mark Garbus, Edward Klein, and Joel Leiderman, (Compl., Docket Entry No. 1), alleging violations of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"), Judiciary Law § 487, and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), and asserting claims of mail and wire fraud, fraud, fraudulent inducement, unjust enrichment, "[d]uty of loyalty," aiding and abetting, negligent misrepresentation, and intentional infliction of emotional distress, (*id*. ¶¶ 1, 6–15).[1] Currently

---

[1] Plaintiff alleges that his "Complaint is based on Civil RICO 18 U.S.C. §§ 1961–1968, Mail and Wire Fraud 18 U.S.C. §§ 1341 & 1343, Fraud, Fraudulent Inducement, Unjust Enrichment, Duty of loyalty, Aiding and Abetting, Negligent Misrepresentation, Judiciary Law § 487, 15 U.S.C. §1692 (e) (d) & (f), Garden Variety Emotional Distress and Fraudulent Intent." (Compl. ¶ 1.) In light of Plaintiff's *pro se* status, the Court construes the Complaint to be asserting the causes of action listed above. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) ("[w]e liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." (alteration in original) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007))).

before the Court is Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Defs. Mot. to Dismiss, Docket Entry No. 13; Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 13-1.) For the reasons set forth below, the Court grants Defendants' motion to dismiss. Plaintiff is granted thirty (30) days from the date of this Memorandum and Order to submit an amended complaint.

## I. Background

In 2012 and 2013, F&G commenced four separate actions against Plaintiff on behalf of National Collegiate Student Loan Trust 2007-4 ("NCSLT"), a Delaware Statutory Trust, to recover money that Plaintiff allegedly owed to NCSLT in connection with his student loans (the "State Court Actions"). (Defs. Mem. 1, 6; Compl. ¶ 28.) F&G filed the State Court Actions in New York City Civil Court, County of Queens. (Defs. Mem. 1; Compl. ¶ 28.)

On November 15, 2013, Plaintiff filed suit against F&G in the Eastern District of New York ("E.D.N.Y."), alleging violations of the FDCPA ("Federal Action #1"). (*Goonewardena v. Forster & Garbus LLP*, Docket No. 13-CV-06415; Defs. Mem. 1.) In Federal Action #1, Plaintiff alleged that F&G engaged in "criminal fraud for the purpose of collecting money using NCSLT while NCSLT already was paid." (Federal Action #1, Compl. ¶ 23, Docket Entry No. 1.) Plaintiff also alleged in Federal Action #1 that "NCSLT is not entitled to receive money [from Plaintiff] since NCSLT is not the current loan holder" of Plaintiff's student loans, and that F&G "used false, deceptive and misleading representations or means in connection with the collection of the debt on behalf of NCSLT." (*Id.* ¶¶ 26, 29.)

The parties executed a settlement agreement in Federal Action #1 on or about January 23, 2014 (the "January 2014 Settlement Agreement"). (Defs. Mem. 2.) Pursuant to the January 2014 Settlement Agreement, Plaintiff agreed to "make payments pursuant to the stipulations of

settlement executed in the [S]tate [C]ourt [A]ctions." (January 2014 Settlement Agreement 1, annexed to Decl. of Glenn M. Fjermedal in Support of Defs. Mot. ("Fjermedal Decl.") as Ex. C.) Plaintiff further agreed to the following release as part of the January 2014 Settlement Agreement:

> Prasanna Goonewardena, and his respective heirs, successors, and assigns, hereby releases and discharges F&G and its respective parent, subsidiary, and affiliate corporations and their respective shareholders, directors, officers, employees, representatives, and agents, and their respective heirs, successors, and assigns, from any and all obligations, liabilities, damages, claims, causes of action, losses, damages, costs, expenses, and attorneys' fees of every kind and nature, in law or in equity, whether the facts on which the same may be based are not known or unknown, which the Plaintiff ever had, now has, or hereafter may have, for, on account of, or by any reason of any action, transaction, occurrence, omissions, relationship, matter, cause or thing to the extent that they relate to the Lawsuit. Plaintiff hereby further releases and waives any and all claims, actions, causes of action, and liabilities Plaintiff may have against F&G, that have allegedly been created as a result of any action or alleged action of F&G, together with any entity related to it by common ownership or affiliated by corporate control, and these companies successors, assigns, servants, agents, employees, attorneys, accountants, officers, directors and representatives, now existing, known or unknown, asserted or unasserted, equitable or at law, arising under or pursuant to common or statutory law, rules or regulations, including, but not limited to, state and/or federal law.

(*Id.* at 1–2.) The January 2014 Settlement Agreement defines the "Lawsuit" as Federal Action #1. (*Id.* at 1.)

On the same day, January 23, 2014, the parties executed agreements settling each of the State Court Actions (the "State Settlement Agreements"). (State Settlement Agreements, annexed to Fjermedal Decl. as Ex. D; Pl. Opp. to Defs. Mot. 2, Docket Entry No. 15 ("Pl. Opp.").) Pursuant to the State Settlement Agreements, Plaintiff agreed to pay a total of $17,000 in monthly payments of a total of $150, "without any interest" and "as full settlement" of the

3

State Court Actions. (State Settlement Agreements 1, 6, 10, 14.) Plaintiff also agreed to the following release of claims:

> Defendant [Goonewardena] releases and discharges National Collegiate Student Loan Trust 2007-4, a Delaware Statutory Trust(s) and its respective current and former predecessors, successors, parents, affiliates, subsidiaries, and all of the aforementioned's respective agents, employees, officers, directors, shareholders, attorneys (Forster & Garbus, LLP.), collection agencies, credit reporting agencies and vendors (the "Releasees") from all claims of any kind (including any claims for damages, interest, fees and/or attorney's fees) that he may have with respect to the Account, or any other matters between Defendant and Releasees, including without limitation, all claims that were asserted or could have been asserted in the Litigation as of the date of this Agreement. Defendant further agrees that he will not file any claims, complaints, affidavits, arbitrations or proceedings with any regulatory or administrative agency with respect to the matters released in this Agreement against any of the aforementioned, and any such claims, complaints, affidavits, arbitrations or proceedings filed prior to the execution of this Agreement shall promptly be dismissed or withdrawn. This Agreement is intended to resolve forever the entire disagreement between Defendant and Releasees.

(*Id.* at 1–2, 6–7, 10–11, 14–15.) The State Settlement Agreements each define the "Account" as one of Plaintiff's four student loan accounts. (*Id.* at 3, 8, 11, 14.)

On June 19, 2014, Plaintiff filed a second suit against F&G in the E.D.N.Y., alleging violations of the FDCPA and New York General Business Law § 349, as well as claims for gross negligence and breach of contract ("Federal Action #2"). (*Goonewardena v. Forster & Garbus LLP*, Docket No. 14-CV-03904, Compl. ¶¶ 24–48, Docket Entry No. 1; Defs. Mem. 2.) The parties executed an agreement settling Federal Action #2 on or about January 21, 2015 (the "January 2015 Settlement Agreement"). (Defs. Mem. 2; January 2015 Settlement Agreement, annexed to Fjermedal Decl. as Ex. F.) The release in the January 2015 Settlement Agreement is identical to the release in the January 2014 Settlement Agreement. (*Compare* January 2014 Settlement Agreement *with* January 2015 Settlement Agreement.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### b. The releases

Defendants contend that Plaintiff's claims in this case are barred by the State Settlement Agreements of the State Court Actions and the January 2014 and January 2015 Settlement Agreements of the Federal Actions. (Defs. Mem. 4–8.) They argue that because Plaintiff

waived his right to bring any claim against Defendants (1) that he "asserted or could have asserted" in the State Court Actions; and (2) "arising from the debts underlying each state court action," the claims asserted in the Complaint are barred, and Defendants' motion to dismiss must therefore be granted. (*Id.* at 5–6, 8.) Defendants also contend that their motion must be granted because in the January 2014 and January 2015 Settlement Agreements, "Plaintiff released F&G and its shareholders, directors, officers, employees, representatives and agents from any and all claims that arose or could have arisen" in the Federal Actions. (*Id.* at 5 (internal quotation marks omitted); *see also id.* at 6.)

Plaintiff contends that the State Settlement Agreements are "null and void" because "NCSLT was not the original creditor" of his student loans, was "not licensed by New York City consumer affairs," and therefore "did not have standing to sue [P]laintiff." (Pl. Opp. 4.) Plaintiff also argues that Federal Action #2 "had to do with [D]efendants sending [P]laintiff a collection letter using a bogus entity committing a fraud" and "nothing to do with NCSLT." (*Id.*) Therefore, Plaintiff argues, "th[e] release [in the January 2015 Settlement Agreement] cannot be used in this action." (*Id.*)

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) (citing *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005)); *see also Lenington v. Kachkar*, 633 F. App'x 59, 60 (2d Cir. 2016) ("Settlement agreements are contracts and must therefore be construed according to general principles of contract law." (quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999)); *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 136 (2d Cir. 2011) ("[T]he starting point for interpreting settlement agreements is general contract-law principles."); *Rispler v. Spitz*, 377 F. App'x 111, 112 (2d Cir. 2010) ("A

settlement agreement is a contract which is binding and conclusive, and is interpreted according to general principles of contract law" (citations and internal quotation marks omitted)); *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir. 2001) ("A release is a species of contract," and is therefore "governed by principles of contract law." (citation and internal quotation marks omitted)). "If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence." *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 594 F. App'x 700, 702 (2d Cir. 2014) (internal alterations omitted) (quoting *Alexander & Alexander Servs., Inc. v. Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998)); *see also Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) ("When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms" (citing *South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277 (2005))); *Cooper v. City of New York*, No. 14-CV-1761, 2018 WL 5115565, at *6 (E.D.N.Y. Oct. 11, 2018) ("[A] release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." (citation omitted)).

A contract provision is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin*, 639 F.3d at 69 (citing *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007)); *see also Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) ("No ambiguity exists where the contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion" (alterations, citation and internal quotation marks omitted)). By contrast, "[a] contract is ambiguous when its terms could suggest 'more than one

7

meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Utica*, 594 F. App'x at 703 (quoting *Lightfood v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)); *see also Lockheed Martin*, 639 F.3d at 69 ("[T]he language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."). In determining whether a contract provision is unambiguous, a court must consider the contract as a whole. *Lockheed Martin*, 639 F.3d at 69. If the contract as a whole "makes clear the parties' over-all intention," the court examining a specific provision must give that provision the construction which will carry out the parties' intent. *See id.* (quoting *Kass v. Kass*, 91 N.Y.2d 554, 567 (1998)).

"The interpretation of an unambiguous contract — including a release — is [ ] a question of law reserved for the court," *Golden Pacific Bancorp*, 273 F.3d at 515, and "it is appropriate to grant a motion to dismiss on the basis of a binding release agreement where . . . the terms of the agreement are clear and unambiguous," *Gupta v. Headstrong, Inc.*, No. 17-CV-5286, 2018 WL 1634870, at *3 (S.D.N.Y. Mar. 30, 2018) (alterations and citation omitted). *See Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) ("The proper interpretation of an unambiguous contract is a question of law for the court.").

Further, "[s]ettlement agreements to end litigation are strongly favored by courts and are not lightly cast aside" — once reached, they are "binding and enforceable." *Collick v. United States*, 552 F. Supp. 2d 349, 352 (E.D.N.Y. 2008); *see also Willgerodt ex rel. Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) ("Settlement agreements are strongly favored in New York and may not be lightly cast aside."). "When a

8

party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect." *Powell*, 497 F.3d at 128; *see also Willgerodt*, 953 F. Supp. at 560 ("A court may relieve a party of the consequences of a settlement agreement only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident'" — "[a]fterthought or change of mind are not sufficient to justify rejecting a settlement." (internal alterations, quotation marks and citations omitted)).

Pursuant to the January 2014 and January 2015 Settlement Agreements, Plaintiff released all claims against F&G and its affiliates "which the Plaintiff ever had, now has, or hereafter may have, . . . to the extent that they relate to the Lawsuit," i.e., the Federal Actions. (January 2014 Settlement Agreement 1; January 2015 Settlement Agreement 1.) In the State Settlement Agreements, Plaintiff released all claims against NCSLT and its attorneys, including F&G, that he "may have [had] with respect to the Account," i.e., Plaintiff's student loan accounts, "or any other matters" between the parties, including "all claims that were asserted or could have been asserted" in the State Court Actions "as of the date" of the State Settlement Agreements. (State Settlement Agreements 1–2, 6–7, 10–11, 14–15.)

The language of the releases contained in the parties' settlement agreements as to both the State Court Actions and the Federal Actions is unambiguous — it has a "precise meaning, as to which there is no reasonable basis for a difference in opinion." *Lockheed Martin*, 639 F.3d at 69. The Court, therefore, interprets the releases to effectuate their unambiguous language. *Corines v. Charter One Bank*, 365 F. App'x 237, 238 (2d Cir. 2010) (if a release is unambiguous, the court interpreting it must effectuate its plain language).

In the Federal Actions, Plaintiff asserted claims against F&G for engaging in "criminal fraud for the purposes of collecting money using NCSLT while NCLST was already paid."

(Federal Action #1, Compl. ¶ 23; *see also* Federal Action #2, Compl. ¶ 28.) Plaintiff also asserted that F&G "used false, deceptive and misleading representations . . . in connection with the collection of the debt on behalf of NCSLT," (Federal Action #1, Compl. ¶ 29; *see also* Federal Action #2, Compl. ¶ 41), and that NCSLT "is not entitled to receive money" because it was not "the current loan holder" of Plaintiff's loans, (Federal Action #1, Compl. ¶ 26; *see also* Federal Action #2, Compl. ¶ 32).

The allegations in the Complaint before the Court are, in sum and substance, the same as those in the Federal Actions. (*See* Compl. ¶¶ 25, 67 ("Foster & Garbus illegally collected payments from [P]laintiff" and "intentionally engage[d] in a fraud"), ¶ 62 (Defendants used "false, deceptive, or misleading representations or means in connection with the collection of [a] debt."), ¶ 36 ("[D]efendants cannot collect any money from the [P]laintiff because . . . the original creditor is not NCSLT").) In addition, because Plaintiff released all claims against Defendants "to the extent that they relate" to the Federal Actions, (*see* January 2014 Settlement Agreement 1; January 2015 Settlement Agreement 1), and "all claims that were asserted or could have been asserted" in the State Court Actions, (State Settlement Agreements 2, 6, 10, 15), the releases bar the claims in the Complaint before the Court. *Tromp v. City of New York*, 465 F. App'x 50, 52 (2d Cir. 2012) ("Words of general release are clearly operative . . . as to all controversies and causes of action between the releasor and the releasees . . . which might then have been adjudicated as a result of pre-existent controversies." (quoting *A.A. Truck Renting Corp. v. Navistar, Inc.*, 916 N.Y.S.2d 194, 196 (App. Div. 2011))); *Centro Empresarial Cempresa S.A. v. Am. Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) ("[A] valid release constitutes a complete bar to an action on a claim which is the subject of the release." (quoting *Glob. Minerals & Metals Corp. v. Holme*, 824 N.Y.S.2d 210, 214 (App. Div. 2006))); *see also*

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) (same); *Edo v. Martiny*, No. 17-CV-202, 2017 WL 785653, at *2 (E.D.N.Y. Mar. 1, 2017) (claims may be released even if lawsuits involve "different causes of actions"); *see also Powell*, 497 F.3d at 128 ("When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect."). However, before dismissing Plaintiff's claims, the Court considers Plaintiff's assertions that he was fraudulently induced to sign the settlement agreements, (Pl. Opp. 4), that he signed the settlement agreements under duress, (*id.*), and that the doctrine of equitable estoppel prevents Defendants from invoking the releases in this case, (*id.* 2–4).

### c. Fraudulent inducement and duress

Plaintiff contends that even if the releases are read to bar Plaintiff's claims in this case, he can nevertheless maintain a cause of action against Defendants because (1) he was fraudulently induced to sign the settlement agreements; and (2) he signed the settlement agreements under duress. (*See, e.g.*, Compl. ¶¶ 31, 37.) Plaintiff asserts: "since NCSLT was not the original owner of the loans, it legally cannot file any claims in any courts in NYC against [P]laintiff because NCSLT was not licensed in NYC to do business. Therefore, any agreement [P]laintiff was fraudulently induced [to enter] into is *null and void*." (*Id.* ¶ 31 (emphasis in original); *see also id.* ¶¶ 36, 37; Pl. Opp. at 4.) Plaintiff also asserts that "[a]ny alleged settlement [P]laintiff signed was under duress by judges and the [D]efendants; therefore, it is null and void." (Compl. ¶ 37.)

Defendants contend that Plaintiff's "conclusory allegations are insufficient to invalidate the clear and unambiguous language of the releases," and that Plaintiff has failed to allege that Defendants committed "a separate fraud from the subject of the release," as he must in order to invalidate an otherwise binding release. (Defs. Mem. 8–9 (citation and internal quotation marks

i. **Fraudulent inducement**

Under New York law, a party may invalidate a contract by satisfying the elements of a fraudulent inducement claim. *See Maxam v. Kucharczyk*, 29 N.Y.S.3d 683, 685 (App. Div. 2016) (holding that the plaintiff failed to establish that the contract was invalid because she failed to state a cause of action for fraudulent inducement); *see also Shapiro v. NFGTV, Inc.*, No. 16-CV-9152, 2018 WL 2127806, at *6 (S.D.N.Y. Feb. 9, 2018) (Where "a plaintiff seeks to invalidate a release due to fraudulent inducement, plaintiff must establish the basic elements of fraud." (alterations, citation and internal quotation marks omitted)); *Citigroup Glob. Markets, Inc. v. KLCC Invs., LLC*, No. 06-CV-5466, 2015 WL 5853916, at *9 (S.D.N.Y. Sept. 28, 2015) (stating that under New York law a party may void a contract by stating a fraudulent inducement claim (citing *Dalessio v. Kressler*, 773 N.Y.S.2d 434, 437 (App. Div. 2004)). "A party has made out a claim of fraudulent inducement if [the party] has pled (i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation . . . ; and (iv) resulting damages." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (citation and internal quotation marks omitted); *see also Comolli v. Huntington Learning Ctrs., Inc.*, 117 F. Supp. 3d 343, 349 (S.D.N.Y. 2015) (same).

Fraudulent inducement claims are subject to the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure, which "requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (alteration in original) (quoting Fed. R. Civ. P. 9(b)). "To satisfy this Rule, a complaint alleging fraud must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id.* (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)); *Cortes v. 21st Century Fox Am., Inc.*, --- F. App'x ---, 2018 WL 4694181, at *2 (2d Cir. 2018) (same). "In other words, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *United States ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-0704, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) (citation and internal quotation marks omitted). As the Second Circuit has explained:

> The purpose of Rule 9(b) is threefold — it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit. Thus, although Rule 9(b) permits knowledge to be averred generally, we have repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent. Essentially, while Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges.

*Wood el rel. United States v. Applied Research Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

A fraud plaintiff may allege facts "that give rise to a strong inference of fraudulent intent" either by "(1) alleging facts to show that defendant had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 491 (S.D.N.Y. 2017) (alteration and citations omitted); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) ("[T]hough mental states may be pleaded 'generally,' [a fraud claimant] must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'" (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006))); *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 401 (E.D.N.Y. 2018) ("To demonstrate

13

fraudulent intent, a plaintiff is required to plead facts that give rise to a strong inference of fraudulent intent. This requires plaintiff to plead either (1) that defendants had [ ] motive and opportunity to commit fraud, or (2) allegations of strong circumstantial evidence of conscious misbehavior or recklessness" (alterations, citations and internal quotation marks omitted)). To show motive and opportunity, a plaintiff must allege that the defendant "benefitted in some concrete and personal way from the purported fraud." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (citation omitted). To show "strong circumstantial evidence of conscious misbehavior or recklessness," a plaintiff must demonstrate "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (citation omitted).

Plaintiff's allegations purporting to show fraudulent inducement are conclusory and cannot withstand Defendants' motion. The Court understands Plaintiff's argument to be that F&G misrepresented that NCSLT was "the original creditor" of Plaintiff's loans, (Compl. ¶ 29), which fraudulently induced Plaintiff into signing the settlement agreements that he entered into with Defendants. (*See id.* ¶¶ 31, 36.) But the Complaint fails to allege how that representation is false and how it induced Plaintiff to sign the settlement agreements. *Meyercord v. Curry*, 832 N.Y.S.2d 29, 30 (App. Div. 2007) (claim for fraudulent inducement cannot withstand motion to dismiss unless plaintiff shows that "defendant's misrepresentation induced plaintiff to engage in the transaction in question").

Further, Plaintiff has failed to satisfy Rule 9(b)'s heightened pleading standard. He does not allege facts that "give rise to a strong inference of fraudulent intent," i.e., facts showing

14

either (1) that Defendants had both motive and opportunity to commit fraud; or (2) strong circumstantial evidence of conscious misbehavior or recklessness, as is required. *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 171. Accordingly, Plaintiff has failed to plausibly allege that he was fraudulently induced to sign the settlement agreements.

### ii. Duress

"An otherwise valid release may . . . be voided on several grounds, one of which is procurement by economic duress." *Interpharm*, 655 F.3d at 142; *see also Knoll v. Equinox Fitness Clubs*, No. 02-CV-9120, 2003 WL 23018807, at *6 (S.D.N.Y. Dec. 22, 2003) ("As with any other contractual release, circumstances evincing . . . duress [can] justify setting aside [a] release." (citation and internal quotation marks omitted)). A release is "voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his free will." *Cavelli v. N.Y.C. Dist. Council of Carpenters*, 816 F. Supp. 2d 153, 161 (E.D.N.Y. 2011) (quoting *First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626, 632 (2d Cir. 1972)); *see also Interpharm*, 655 F.3d at 142 ("To void a contract on the ground of economic duress, the complaining party must show that its agreement was procured by means of (1) a wrongful threat that (2) precluded the exercise of its free will.").

"A party may ratify a contract or release entered into under duress by . . . remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it, or by acting upon it, performing under it, or affirmatively acknowledging it." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 123 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also United States v. Twenty Miljam-350 IED Jammers*, 669 F.3d 78, 89 (2d Cir. 2011) (party claiming duress "must act promptly or will be deemed to have elected to affirm [the

15

contract]" (alteration, citation and internal quotation marks omitted)).

Plaintiff alleges that he entered into the settlement agreements under duress, but he fails to allege how or what forced him to enter into the agreements, identify the alleged wrongful threat, or explain how the alleged threat prevented the exercise of his free will. *See Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 129 (S.D.N.Y. 2012) ("Plaintiff invokes the magical word 'duress,' but in so doing he merely states a legal conclusion unsupported by enough facts to cross the line into the realm of plausible."). Moreover, even if the settlement agreements were entered into under duress, the Court finds that Plaintiff ratified the agreements "by remaining silent" for almost four years in the case of the State Court Actions and Federal Action #1, and almost three years in the case of Federal Action #2. *VKK Corp.*, 244 F.3d at 123. Plaintiff therefore cannot avoid the consequence of the releases by invoking duress.

### d. Equitable estoppel

In opposition to Defendants' motion, Plaintiff argues that because Defendants "vigorously claimed that NCSLT was the original owner" of Plaintiff's loans, the "doctrine of equitable estoppel [ ] preclude[s] enforcement of the releases." (Pl. Opp. 2, 3.)

Defendants contend that "there were no such misrepresentations made to procure [the] settlements which substantially reduced Plaintiff's student loan obligations" and that the doctrine of equitable estoppel "should not be used to accomplish such wrongful conduct on the part of the Plaintiff," i.e., to allow Plaintiff to renege on his obligation to pay his student loans. (Defs. Reply in Further Supp. of Defs. Mot. 9, Docket Entry No. 14.)

"Equitable estoppel is properly invoked 'where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.'" *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir.

2011) (quoting *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001)). "The party alleging equitable estoppel must demonstrate: (1) [a]n act constituting a concealment of facts or misrepresentation; (2) [a]n intention or expectation that such acts will be relied upon; (3) [a]ctual or constructive knowledge of true facts by the wrongdoers; [and] (4) [r]eliance upon the misrepresentation which causes the innocent party to change its position to its substantial detriment." *Gaia House Mezz LLC v. State Street Bank and Trust Co.*, 720 F.3d 84, 90 (2d Cir. 2013) (quoting *Gen. Elec. Capital Corp. v. Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994)). That party must also demonstrate that it "(1) lacked knowledge of the true facts; (2) relied upon the adverse party's conduct; and (3) prejudicially changed its position." *Garrett v. Music Pub. Co. of Am., LLC*, 740 F. Supp. 2d 457, 464 (S.D.N.Y. 2010); *see also Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F. Supp. 2d 507, 524 (S.D.N.Y. 2009) (same).

Neither the Complaint nor Plaintiff's opposition to the motion includes allegations that Defendants undertook any course of action that should prevent them from asserting their right to enforce the releases. *See Brenner v. Brenner*, 821 F. Supp. 2d 533, 542 (E.D.N.Y. 2011) (dismissing claims and rejecting equitable estoppel argument as plaintiff did not allege that defendant's conduct amounted to a false representation or concealment of material facts). Accordingly, Plaintiff is not entitled to benefit from equitable estoppel.

    e.   **Leave to amend**

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file an amended complaint within thirty (30) days of this Memorandum and Order. Any further amended complaint should specify how Defendants alleged misrepresentations induced Plaintiff to sign the settlement agreements. Plaintiff should also explain how Defendants' alleged actions give rise to a strong inference of fraudulent intent. An amended complaint completely replaces the

17

prior complaint filed in this action and must be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order.

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss. Plaintiff is granted leave to file an amended complaint within thirty (30) days of this Memorandum and Order.

Dated: January 7, 2019
       Brooklyn, New York

                              SO ORDERED:

                                  s/ MKB
                            MARGO K. BRODIE
                            United States District Judge