

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PRASANNA GOONEWARDENA

                      Plaintiff              **AMENDED COMPLAINT**

        -against-                  **CIVIL ACTION NO. 18CV29**

FORSTER & GARBUS LLP, and, AMY GAVLICK,
and, RONALD FOSTER, and, MARK GARBUS, and,
EDWARD KLEIN, and, JOEL LEIDERMAN

                                    **JURY TRIAL**
                                    **DEMANDED**

                          Defendants

------------------------------------------------------------X

### Preliminary Statement

1.  Plaintiff's Complaint is based on Civil RICO 18 U.S.C.§§ 1961- 1968, Mail and

Wire Fraud 18 U.S.C. §§ 1341 & 1343, Fraud, Fraudulent Inducement, Unjust Enrichment, Duty

of loyalty, Aiding and Abetting, Negligent Misrepresentation, Judiciary Law § 487,

15 U.S.C §1692 (e) (d) & (f), Garden Variety Emotional Distress and Fraudulent Intent.

2.  RICO authorizes a private right of action for treble damages by a "person injured in his

business or property by reason of a violation of section 1962 of [title 18]." 18 U.S.C § 1964 (a)

(c). RICO defines racketeering activity to include mail fraud in violation of 18 U.S.C. § 1341 and

wire fraud in violation of 18 U.S.C. 1343. See U.S.C. § 1961 (1).

3.  Upon information and belief, the owner of plaintiff's four loans with the index numbers

80/13 and 76/13 at the time the defendants sued plaintiff in Queens Supreme Court & Civil Court

was the Guarantor The Education Resource Institute ("TERI") not National Collegiate Student

1

Loan Trust ("NCSLT"). The defendants knew that NCSLT was not the owner of plaintiff's loans when they sued plaintiff in court and when they signed the agreement.

4.   When Ronald Foster and Mark Garbus , sent fraudulently collected revenue from plaintiff by mail and electronically every month to the indenture trustee U.S. Bank National Association  president David Duclos, and servicer, Transworld Systems INC., they committed mail and wire fraud.

5.   On 8/2/10, Guarantor took ownership of Plaintiff's four loans by paying NCSLT. (Exhibit D.)

6.   Mr. Donald Ulderitz is the NCSLT owner and he lives in Florida. His address is: 407 SE 1st Street, Delray Beach, FL 33483.

7.   Mr. David Duclos is the indenture trustee and his address is: One Federal Street 3rd floor, Boston, MA 02110.

8.   When Ms. Amy Gavlik and Ronald Foster mailed the fraudulent settlement agreement plaintiff signed under duress from *judges,* electronically and by mail to Transworld Systems Inc. located in Pennsylvania that ultimately hurt plaintiff financially, they committed mail & wire fraud.

9.   When Mr. Klein Mailed the summons and complaint to the plaintiff stating "plaintiff is the original creditor and is not required to be licensed by the NYC department of consumer affairs" (Exhibit C) he committed mail fraud.  National Collegiate Student Loan Trust is not the original creditor.

### Jurisdiction and Venue

10. This court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. Supplemental jurisdiction over the state claims under 28 USC § 1367.

11. Defendants conduct business in the State of New York and therefore, personal jurisdiction is established.

12. Venue is proper pursuant to 28 U.S.C. § 1391 (b).

13. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## Parties

14. Plaintiff is a natural person residing at 247-34A 77 Cres, Bellerose, NY 11426.

15. Defendants Forster & Garbus LLP ("F&G") is a debt collection company located at 60 Motor Parkway, Commack, NY 11725.

16. Defendant Amy Gavlik's business address is: 60 motor Parkway, Commack, NY 11725.

17. Defendant Amy Gavlick is an employee of Forster & Garbus LLP.

18. Defendant Ronald Foster is the controlling partner, and control day to day operations at F&G. His Address is: 60 Motor Parkway, Commack, NY 11725.

19. Defendant Edward Klein's address is: Cohn & Roth, 100 E Old Country Rd. Mineola, NY 11501- 4633.

20. Defendant Mark Garbus is a controlling partner at F & G. His business address is: 60 Motor Parkway, Commack, NY 11725

21. Defendant Joel Leiderman is an employee of Forster & Garbus LLP. His address is: 60 Motor Parkway, Commack, NY 11725

22. The Defendants acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

3

## Factual Allegations

23. Plaintiff became aware of the defendants' fraud when Consumer Financial Protection Bureau filed a suit against Donald Ulderitz, the owner of NCSLT , U.S. Bank National Association owner David Duclos  in Massachusetts and the servicer Transworld Systems Inc.. (See Exhibit A, NY Times 9/19/17 article and *Consumer Financial Protection Bureau v. National Collegiate Student Loan Trust 17 CV 1323 Delaware* ) (Exhibit A.)

24. Plaintiff paid off two loans (Civil Court Index Numbers 40779/12 & 40776/12). That money must be returned to plaintiff with punitive damages since the entire transaction was predicated on fraud. Moreover, on 8/8/18 , Plaintiff received a collection letter from NCSLT current servicer Transworld systems INC., stating that Plaintiff owe money on the two Civil Court claims Plaintiff paid off. Plaintiff paid off those two loans pursuant to agreement on. Defendants are refusing to file the stipulation of discontinuance with the civil court. Upon information and belief, monthly payment Plaintiff sent to Defendant F&G, never sent to NCSLT. This is because Plaintiff never owed any money to NCSLT.

25. Foster & Garbus  illegally collected payments from plaintiff.

26. Plaintiff sent a good faith attempt letter on October 5, 2017 (Exhibit E) to defendant Ronald Foster requesting F&G  to stop all collection activities for the two loans Plaintiff is currently paying and refund all the money they illegally collected from plaintiff pursuant to CFPB's settlement. Defendant Foster refused.

27. Instead, Mr. Joel Leiderman mailed a letter to plaintiff refusing to stop collection. (Exhibit F.) He committed mail fraud when he sent plaintiff that letter stating that they will not honor plaintiff's request. That letter contained false statements e.g.  " if you cannot respect the terms of the releases to which you have agreed, then making a payment to you would apparently

4

not stop you from threatening or commencing litigation in the future." (*id.*) According to

Transworld Systems Inc. (500 Virginia Dr. Suite 514 Fort Washington Ave, PA, 19034),

Defendant Joel Leiderman sent that letter to Transworld Systems Inc. electronically on or around

October 16, 2017. Mr. Leiderman committed wire fraud when F&G sent the letter containing

false statements electronically to Transworld Systems Inc.

28. Defendants Ronald Foster & Edward Klein sent plaintiff summons and complaint

by mail in 2012 stating that plaintiff owed money to National Collegiate Student Loan Trust.

Plaintiff did not owe any money to NCSLT.

29. Plaintiff owes money to guarantor not NCSLT. Defendants F&G does not re[present

Guarantor TERI. Mr. Klein committed mail fraud when he filed the four lawsuits against

Plaintiff. (Exhibit D.)

30. The summons and complaint state: "Plaintiff is the original creditor and is not required to

be licensed by the NYC department of consumer affairs." NCSLT was not the original creditor.

It has only two officers-Dori Castello and the owner Donald Ulderitz. Plaintiff never entered into

any agreement with NCSLT officers. (Exhibit C.)

31. Plaintiff signed the loan with Charter One Bank. (Exhibit B.) Donald Ulderitz, owner of

NCSLT never obtained the loans legally from Charter One Bank.

32. Defendants vigorously prosecuted four claims against plaintiff fraudulently that cannot be

collected knowing that NCSLT was not the owner of the loans. Also, since NCSLT was not the

original owner of the loans, it legally cannot file any claims in any courts in NYC against

plaintiff because NCSLT was not licensed in NYC to do business. Therefore, any agreement

plaintiff was fraudulently induced entered into is *null and void*. The money plaintiff paid so far

must be returned to plaintiff with damages.

33. Defendants filed fraudulent papers with the court commiting mail and wire fraud.

34. Defendants are the new Bernie Madoff.

35. Defendants have filed thousands of lawsuits in Queens civil court listing bogus entities.

They get judgments because they are friends with the judges and law clerks.

### Alleged Settlement is Null and Void

36. There is no signatures of the owner of the trust, indenture trustee, David Duclos and the

servicer Transworld Systems Inc. in the alleged settlement agreement. Therefore, there is no

settlement agreement with NCSLT.

37. As a matter of law, defendants cannot collect any money from the plaintiff because the

claim cannot proceed in court since the original creditor is not NCSLT and NCSLT is not

licensed by NYC consumer affairs.

38. Plaintiff was fraudulently induced into signing a settlement agreement document on a

complaint that was fraudulently filed with the court. Therefore, the agreement is voidable.

39. A debt collector may not "use any false, deceptive, or misleading representation or means

in connection with the collection of any debt." The defendants lied on the complaint stating that

NCSLT is the original creditor while the original creditor was Charter One Bank. Also, NCSLT

was not the owner of plaintiff's loans. It was the Guarantor TERI. NCSLT never legally obtained

the loans from Charter One Bank. This is clearly a scam orchestrated by the individual

defendants.

40. Fraud cannot be an agreement.

41. A debt collector may not "use any false, deceptive, or misleading representation or means

in connection with the collection of any debt." 15 U.S.C. § 1692 e. Such a prohibition includes

the false representation of "the character, amount, or legal status of any debt:"

15 U.S.C. § 1692 e (2) (A). Such a prohibition also includes the use of any false representation or

deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e (10). Since the

complaint contains false statements, so called, "Settlement" is null and void.

### First Claim for Relief:
### Fraudulent Inducement

42. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1

through 41 as if set forth fully in this Count.

**43. The defendants knew that** the owner of plaintiff's loans were guarantor TERI at the

time they made Plaintiff signed the agreements. (Exhibit D.)

**44. The defendants knew that** the owner of plaintiff's loans were guarantor TERI at the

time they took legal actions against plaintiff. (Exhibit D.)

**45.** Plaintiff was fraudulently induced into signing the agreement on four loans the

Defendants legally cannot collect.

**46.** Fraud cannot be an agreement.

47. The summons and complaint prepared by Edward Klein state: "Plaintiff is the

original creditor and is not required to be licensed by the NYC department of consumer affairs."

(Exhibit C.) NCSLT was not the original creditor. It has only two officers-Dori Castello and the

owner Donald Ulderitz. Plaintiff never entered into any agreement with NCSLT officers.


*Material Facts misrepresented by the Defendants*

**48.** Defendants, Leiderman, Ronald Foster, Edward Klein, Amy Gavlik and Mark Garbus

fraudulently induced Plaintiff entering into agreement with plaintiff stating that NCSLT is the owner of plaintiff's loans. The owner of Plaintiff's loans was TERI not NCSLT. The Defendants had no duty to enter into a settlement agreement with the Plaintiff since NCSLT was not the owner of Plaintiff's loans. The Defendants knew ahead of time prior to the settlement agreement that NCSLT was not the owner of Plaintiff's loans.

49. Even assuming *arguendo*, NCSLT was the owner of the loans which they are not, the Defendants' never sent the payments to NCSLT that Plaintiff made to the Defendants on behalf of NCSLT.

50. Since Defendant Any Gavlick argued in state court and civil court that NCSLT was the owner of Plaintiff's loans, Plaintiff believed the Defendants not knowing that Defendants were lying.

51. Based on the evidence Plaintiff obtained from the servicer AES, on 12/27/17, Plaintiff became aware that Plaintiff's loans were paid off by the guarantor TERI as pursuant to their agreement. (Exhibit D.)

52. When Plaintiff signed the agreement on 1/23/14, Defendant Amy Gavlick duped Plaintiff into believing that NCSLT was the owner of Plaintiff's loans.

53. On 8/8/18 Plaintiff received a collection letter from the current servicer for NCSLT, Transworld Systems Inc. stating that NCSLT had not received a single cent from the Plaintiff and that they demand Plaintiff to pay the two loans that Plaintiff finished paying off. (Exhibit G the "Collection letter".)

54. The Defendants, especially Mark Garbus, Ronald Foster and Amy Gavlick's main goal was to deceive Plaintiff.

55. Their intention was to split the money with Transworld Systems Inc. without sending the

payments to NCSLT. Since the payments were never entered in the system as "payments made" to NCSLT, Servicer Transworld Systems Inc. decided on August 8, 2018 to send a collection letter to Plaintiff in an attempt to collect money on two loans that were paid off by the Plaintiff. (Exhibit G.)

**56.** The defendants main goal was to collect money from plaintiff by filing fraudulent claims against plaintiff. In 2018, Plaintiff became aware that the Defendants have done this to thousands of NY state residents.

57. Plaintiff relied on Defendants statements that Plaintiff owed money to NCSLT. Plaintiff sent the money to NCSLT as agreed monthly. In 2018, Plaintiff found out that the Defendants never sent any money to NCSLT.

58. Plaintiff relied on that misrepresentation and Plaintiff was injured financially and continue to suffer financial loss.

59. The defendants could have [refunded] the payments to Plaintiff when Plaintiff wrote to F& G employee Ronald Forster on October 5, 2017 requesting him to refund the money. (Exhibit E.)

60. Instead, Defendant Leiderman continued on his fraud by sending a letter to Plaintiff refusing to refund the money. (Exhibit F.) Again, Defendant Leiderman misrepresented the facts. His intention was to deceive Plaintiff further; Plaintiff relied on Defendant Leiderman's misrepresentation and endured financial damages.

61. When Edward Klein filed the summons and complaints in Civil Court and Supreme Court misrepresenting Plaintiff and the Courts, he committed a fraud. Plaintiff relied on the Defendant Klein's false statements and Plaintiff was financially injured.

62. When NCSLT owner agreed to refund the money pursuant to Consumer Financial Protection Board agreement to all loan holders who made payments, and when the Defendants refused to refund the money, they committed fraud; and Plaintiff was financially hurt relying on the Defendants misrepresentations.

63. When the Plaintiff's loans were obtained from Charter One Bank and Bank of America by NCSLT owner, he never signed the agreement with Charter One Bank and Bank of America. Therefore, NCSLT was never legally obtained the loans from the banks. This is what prompted CFPB to take legal actions against NCSLT, the servicers and U.S. Bank National Association. Plaintiff did not know that NCSLT never legally obtained the loans from the banks until recently. However, Defendants knew that NCSLT owner never legally obtained the loans from Charter One Bank and Bank of America. Knowing this, Defendant Amy Gavlick, Ronald Foster and Mark Garbus made plaintiff signed an agreement that they legally cannot entered into.

64. The Defendants, Edward Klein, Ronald Foster, Mark Garbus and Amy Gavlick misrepresented Plaintiff when they said NCSLT was the original owner. Plaintiff relied on that misrepresentation. Plaintiff financially damaged by paying money monthly on a loan that was never legally obtained by NCSLT from Bank of America and Charter One Bank.

65. Plaintiff was fraudulently induced by the Defendants, Amy Gavlick and Joel Leiderman when they entered into an agreement with Plaintiff that they legally cannot.

66. If Plaintiff knew that the Defendants were not going to send the money to NCSLT or the actual owner TERI, Plaintiff would not have signed any agreement.

## Second Claim for Relief:
(Civil RICO 18 U.S.C. §§ 1961-1968)

67. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1

through 66 as if set forth fully in this Count.

68. Defendants Ronald Foster, Amy Gavlik, Edward Klein, Mark Garbus and Joel Leiderman are "persons" 18 U.S.C. § 1961 (3).

69. F&G is an "enterprise" as defined in 18 U.S.C. § 1961(4).

70. F&G engages in interstate commerce. Upon information and belief, F&G obtain these loans and made deals with NCSLT, Transworld Systems Inc. and U.S Bank National association located outside of New York and files law suits in courts in Nassau county, Queens, Kings, Manhattan and Bronx after obtaining authorizations electronically.

71. The defendants electronically and by mail sent documents to servicer (Fraudulently obtained settlement agreement) Transworld Systems Inc. committing mail and wire fraud.

72. Defendants, mailed and electronically sent fraudulent settlement agreements obtained from plaintiff to Transworld Systems Inc. and US. Bank National Association located outside of New York. The defendants committed mail and wire fraud. See *Sykes v. Harris and Associates LLC.*, 13-2742-CV, 13-2747-CV, 13-2748-CV (2nd Cir 2015); *Zimmerman v. Poly Prep country Day Sch.* 09 CV 4586 (E.D.N.Y. Aug. 28, 2012).

73. After collecting the payments from various individuals, defendants mail and electronically sent the payments to U.S. Bank National Association owner David Duclos and the servicer Transworld Systems Inc. This is mail and wire fraud.

74. Upon information and belief, F&G never filed fraudulently obtained commissions from plaintiff and others with the IRS and New York State Taxation Department.

75. By filing tax returns less (without including the payments they obtained from Plaintiff and others) by mail & electronically they committed mail & wire fraud. 18 U.S.C. § 1341 & 1343.

76. Defendant Leiderman continued on his fraud by sending a letter to Plaintiff refusing to refund the money. (Exhibit F.) Again, Defendant Leiderman misrepresented the facts; he intention was to deceive Plaintiff further; Plaintiff relied on Defendant Leiderman's misrepresentation and endured financial damages.

77. When Edward Klein filed the summons and complaints in Civil Court and Supreme Court misrepresenting Plaintiff and the Courts, he committed a fraud. When Plaintiff relied on the Defendant Klein's false statements, Plaintiff was financially injured.

78. The Defendants actively seek to sue Plaintiff's information sending emails to U.S. Bank National Association owner David Duclos in Delaware in order to file lawsuits against Plaintiff knowing that NCSLT was not the owner of Plaintiff's loans. By engaging in such activity, Defendants committed fire fraud.

### *Patten of Racketeering Activity-Mail and Wire Fraud*

79. Defendants, acting individually and as part of the Enterprise, have engaged, directly or indirectly, a pattern of racketeering activity, as described above and below, in violation of 18 U.S.C. § 1962 (c) & (d).

A. Defendants, acting individually and as part of the enterprise, have devised a scheme to defraud and to obtain money or property by means of false or fraudulent pretenses and representations. The scheme includes but not limited to:

i. Producing and filing fraudulent complaints that falsely claim that NCSLT is the original creditor while NCSLT is not the original creditor;

ii. Producing, and filing false attorney affirmation stating that NCSLT is the

12

original creditor while NCSLT is not the original creditor;

iii. Producing and filing false complaint with Queens Supreme court stating that plaintiff owe money to NCSLT while plaintiff does not owe any money to NCSLT;

iv. Using Fraudulent, misleading and deceptive statements to get a judgment from court under false pretenses.

80. Defendants, acting individually and as part of the Enterprise, have used mails and wires and have caused the mail and wires to be used, or reasonably knew the mails and wires would be used, in furtherance of their fraudulent scheme. Specifically:

A.  In a sworn affidavit, defendant Edward Klein stated that NCSLT is the original creditor and sent the false complaint and summons via U.S. mail to plaintiff on February of 2013. (Exhibit C.)

81. Defendants have used mails and wires to prosecute and get judgments against plaintiff using a complaint that include false statements.

82. Each of the tens, if not hundreds, of thousands of uses of the mails and wires in connection with defendants' schemes to defraud, spaning a period of no fewer than six years, constitutes a separate instance of mail and/or wire fraud within the meaning of 18 U.S.C. §§ 1341 and 1343, and thus is also a predicate act, which taken together, constitute "a pattern of racketeering activity" within the meaning of 18 U.S.C. §§ 1961 and 1962.

***Relationship of Pattern of Racketeering Activity to Enterprise***

83. As described, the goal of defendants' Enterprise is to secure a judgment through fraudulent means and to use those judgments to extract money and property from plaintiff.

84. The pattern of racketeering activity described above is integral to defendants' scheme.

Without engaging in mail and wire fraud, defendants would be unable to obtain ruling they seek.

85. Each defendant, individually and as a member of the enterprise, has conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through the pattern of racketeering above. Accordingly each defendant has violated 18 U.S.C § 1962 (c)

86. Moreover, each defendant, has agreed and conspired to violate the provisions of 18 U.S.C. § 1962 (c), including the numerous predicated acts of mail and wire fraud described above, and has thus violated 18 U.S.C. § 1962 (d).

### Third Claim for Relief:
### Violation of 15 U.S.C. §1692e.f &d.

87. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1 through 86 as if set forth fully in this Count.

88. The defendant Edward Klein falsely or deceptively represented National Collegiate Student Loan Trust as the original creditor when Charter One Bank was the original creditor. This is in violation of 15 U.S.C. § 1692e. Here, the original creditor was Charter One Bank. (Exhibit B.)

89. Defendant Edward Klein says, "Plaintiff owes money to NCSLT." Plaintiff is so confused to find if plaintiff allegedly owed money to guarantor TERI, then why is plaintiff owe money to NCSLT" This is so confusing to the least sophisticated consumer. Plaintiff does not owe any money to NCSLT. They never legally obtained the loans from Charter One Bank.

90. Using false, deceptive, or misleading representations or means in connection with the collection of any debt, in violation of 15 USC § 1692e. The defendants falsely stated in the complaint that NCSLT is the owner of plaintiff's loans while the owner was guarantor.

91. Defendant Edward Klein indicated in the complaint NCSLT is the original creditor. The second circuit held that a debt collection complaint from a law firm or lawyer violates section 1692e (3) if an attorney was not "directly & personally involved" with the debtor's account – such as by reviewing the debtor's file - before the complaint filed. The original creditor was Charter One Bank. (Exhibit B.)

92. The amount defendant Edward Klein listed in the complaint is false. This is in violation of 15 U.S.C. 1692 e (2) (a).

### Fourth Claim for relief:
(N.Y. Jud. Law § 487)

93. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1 through 92 as if set forth fully in this Count.

94. New York law states that "an Attorney or counsel who. . . is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party. . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law. . . forfeits to the party injured treble damages, to be recovered in a civil action. (N. Y. Jud. Law § 487 (1).

95. The defendants intentionally engage in a fraud and continue to engage in a fraud after the trust owner Donald Ulderitz agreed to return all money to borrowers. ( See *Consumer Financial Protection Bureau v. National Collegiate Student Loan Trust (17 CV 1323 Delaware).*)

96. The defendants could have and should have stop all collection activities when plaintiff

sent the good faith attempt letter on October 5, 2017 to the defendants. By refusing to stop

collection activities on a fraudulently filed complaint, defendants could be held liable under N.Y.

Judicial Law § 487.

97. As a result, plaintiff is entitled to damages under N.Y. Judicial Law § 487.

## Fifth Claim for Relief:
## Unjust Enrichment

98. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1

through 97 as if set forth fully in this Count.

99. Forcing plaintiff to sign an agreement predicated on fraud that did not have the

signature of the loan owner, TERI, and the Trust owner Donald Ulderitz, indenture Trust David

Duclos and the servicer Trans World Systems INC., the defendants may be held liable for

violation of unjust enrichment.

## Sixth Claim for Relief:
## Fraud

100.     Plaintiff hereby restates, realleges, and incorporates herein by reference

paragraphs 1 through 99 as if set forth fully in this Count.

101.     Upon information and belief, defendants scam started by collaboration by several

parties: Indenture trustee, David Duclos contacting Transwold Systems Inc. and Transworld

contacting the defendants to initiate a fraudulent lawsuit against plaintiff.

102.     Defendants' actions injured plaintiff financially.

103.     All parties including F&G employees were aware that plaintiff's loans were not

legally obtained by the trust owner Donald Ulderitz and that plaintiff's loans were paid off by the

guarantor on 8/02/2010. (Exhibit D.)

104. The defendants represent material fact that was false when they filed the lawsuits in State Supreme Court. The defendant Edward Klein knew that the information contained in the complaint was false. Plaintiff relied on the false information in the complaint. Plaintiff was injured in the process.

105. Defendants main object was to scam plaintiff and collect money that they are not entitled to.

### Seventh Claim for Relief:
### Violation of duty of loyalty

106. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1 through 105 as if set forth fully in this Count.

107. The NCSLT owner Donald Ulderitz agreed to return all payments F&G collected fraudulently from plaintiff pursuant to the settlement NCSLT reached with Consumer Financial Protection Bureau. However, F&G is refusing to refund the money to plaintiff.

108. When the defendants refused to abide by the agreement NCSLT reached with CFPB, the defendants violated duty of loyalty.

109. When the defendants refused to honor plaintiff's request to stop all collection activities, defendants violated duty of loyalty.

### Eighth Claim for Relief:
### Negligent Misrepresentation

110. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1 through 109 as if set forth fully in this Count.

111. The defendants and plaintiff has special or privity- like relationship imposing a duty on the defendants to impart correct information (plaintiff's loans were paid off by the guarantor) to the plaintiff. The defendants knew that when they took legal actions against

17

plaintiff, they are committing a fraud. The information defendant Edward Klein filed with the court stating "Plaintiff is the original creditor and is not required to be licensed by the NYC Department of Consumer Affairs," is false. Also NCSLT was not the owner of plaintiff's loans when the defendants took legal actions against plaintiff. The defendants committed negligent misrepresentation.

112.    Even assuming *arguendo*, if NCSLT was the owner of plaintiff's loans, and on 8/2/2010, guarantor took ownership of the loans, NCSLT gave up the ownership of the loans. Therefore, owner of plaintiff's loans was the guarantor TERI not NCSLT at the time the defendants took legal actions against the plaintiff & signed any agreements.

113.    When plaintiff informed the defendants on 10/05/17, to stop all collection activities and refund the money plaintiff paid so far, the defendants had a duty to correct their unlawful actions. By informing that the defendants will not honor plaintiff's request, they committed negligent misrepresentation.

114.    Plaintiff relied on the false information.

115.    Plaintiff is financially injured because F&G breach the duty not informing plaintiff that NCSLT was not the owner of plaintiff's loans.

116.    The defendants Mark Garbus, Edward Klein, Ronald Foster are corporate officers & lawyers having special expertise in the relevant area.

117.    Defendants used false and misleading information to collect a debt that they legally cannot.

118.    Defendants misrepresented the facts of plaintiff's loans. (e.g. NCSLT was not the owner of the loans and the owner was the guarantor TERI.)

### Ninth Claim for Relief:
### Aiding and Abetting

119.     Plaintiff hereby restates, realleges, and incorporates herein by reference

paragraphs 1 through 118 as if set forth fully in this Count.

**120.**     **Defendants** financially profited by filing four lawsuits in courts by aiding and

abetting with the servicer in 2013, NCO Financial Systems Inc. and U. S. Bank National

Association owner David Duclos.

### Tenth Claim for Relief:
### Garden Variety Emotional Distress

121.     Plaintiff hereby restates, realleges, and incorporates herein by reference

paragraphs 1 through 120 as if set forth fully in this Count.

**122.**     **Plaintiff was unnecessarily** hurt financially due to defendants' fraudulent act.

**123.**     Plaintiff suffered and continue to suffer emotionally.

### Prayer for Relief

WHEREFORE, plaintiff prays for relief as follows:

A.   That the jury find and the Court adjudge and decree that plaintiff shall recover

compensatory damages in the sum of $800,000.00 against the defendants;

B.   Punitive damages in the amount of eight hundred thousand dollars ($800,000.00);

C.   Emotional damages in the sum of $300,000.00;

D.   That the plaintiff have such other and further relief as the Court shall deem just and

proper.

Dated: February  13  , 2019          Respectfully submitted,
        Queens, N.Y.

Prasanna Goonewardena

# EXHIBIT A

# Creditor Must Refund Millions in Student Loan Debt

## From First Business Page

If tens or hundreds of thousands of loans need to be written off, the cost of the settlement could grow far beyond the initial $21 million tally. The insurance company Ambac, which has hundreds of millions of dollars of exposure to National Collegiate's securities through insurance it sold to investors, warned last month in a regulatory filing that it might need to set aside an additional $200 million to cover losses on its student loan portfolios.

Donald Uderitz, a financier whose private-equity firm is the beneficial owner of National Collegiate's trusts, said he welcomed the government's action.

"We're pleased with the outcome," Mr. Uderitz, the founder of Vantage Capital Group, in Delray Beach, Fla., said in an interview. "This independent verification of problems we've been investigating ourselves for three years. The audit will allow us to figure out the scope, come up with a compliance plan and make the changes that need to be made."

Mr. Uderitz has been locked in a legal dispute with other companies involved in operating the National Collegiate trusts.

The loans were made a decade or more ago by lenders like Bank of America and JPMorgan Chase. Those banks lent money to students, then sold those debts to investors. American borrowers owe $1.4 trillion on student loans, mostly on federal loans that are issued or guaranteed directly by the government. Private loans, which total $100 billion, come with far fewer consumer protections.

Students graduating in Tullahoma, Tenn. The National Collegiate Student Loan Trusts settled with federal regulators.

Around $5 billion of the debt owed to National Collegiate is in default. Mr. Uderitz, who bought his interest in the trusts in 2009, said he had been trying for years to end collection practices he considers abusive and illegal.

Among those that Mr. Uderitz has been feuding with are U.S. Bank, which is responsible for handling loans that are overdue. U.S. Bank hired Transworld to collect payments. Transworld has aggressively pursued delinquent borrowers in court, filing a deluge of cases — nearly 38,000 in one recent 18-month span — seeking payment.

Many of those cases had fatal legal flaws, according to the consumer bureau.

Transworld sued on loans that were too old to be collectible,



JOE BUGLEWICZ FOR THE NEW YORK TIMES

failed to properly review chain-of-title documents proving ownership of the loans and submitted legal filings in which its employees "falsely claimed personal knowledge of the account records and the consumer's debt," the bureau wrote in a consent order against Transworld.

The consent order is effective immediately. The proposed judgment against the trusts requires approval by a judge in United States District Court in Delaware.

Transworld, in Fort Washington, Pa., said in a statement that it was "disappointed" by the Consumer Financial Protection Bureau's action.

The company "disagrees with the C.F.P.B.'s characterizations, and with many of the alleged facts in the consent order," it said. "TSI

decided to settle with the C.F.P.B. in order to avoid costly and potentially protracted litigation with our primary regulator, and so that we may continue to focus all of our efforts on serving the needs of our customers."

David Zwick, a spokesman for Transworld, or TSI, declined to comment on whether the company would halt its pending litigation against borrowers. Dana E. Ripley, a spokesman for U.S.

Bank, declined to comment on the consumer bureau's claims.

Sam Gilford, a spokesman for the consumer bureau, said the trusts "must suspend all further collection efforts until a compliance plan has been approved and implemented."

Robyn Smith, a lawyer with the National Consumer Law Center, a nonprofit advocacy group, said she hoped the consumer bureau would use the deal as a template and pursue other student loan debt collectors. Many use shoddy and inaccurate paperwork to pursue legally flawed cases, she wrote in a 2014 report about the practices.

"This is a great precedent, but unfortunately National Collegiate are not the only ones engaging in this behavior," Ms. Smith said.

## A pause while 800,000 loans are reviewed by auditors.

Fidelity INVESTMENTS

Call today for a
FREE Retirement Review

866.533.3721

Keep in mind that investing involves risk. The value of your investment will fluctuate over time, and you may gain or lose money.

Before investing, consider the fund's investment objectives, risks, charges, and expenses of the fund or annuity and its investment options. Call or write for a free prospectus or, if available, a summary prospectus containing this information. Read it carefully.

© 2017 FMR LLC. All rights reserved.

3650.2.0

# New York Attorney General Opens Inquiry on Student Debt

## Loan Collector Struggles to Find the Required Paperwork

By STACY COWLEY

The New York attorney general, Eric T. Schneiderman, has opened an investigation into the collection practices of the National Collegiate Student Loan Trusts, one of the nation's largest owners of private student loan debt, according to Mr. Schneiderman's office.

The attorney general's office sent subpoenas on Wednesday asking for information on every collection lawsuit filed by National Collegiate's trusts against New York residents.

National Collegiate's trusts have aggressively pursued in court borrowers who fall behind on their student loan payments. An article this week in The New York Times drew attention to the trusts' inability in many of those lawsuits to produce the paperwork needed to prove that the trusts own the debts they seek to collect. Judges around the country have dismissed dozens of cases filed by National Collegiate's trusts because of flawed or missing paperwork.

The 800,000 private student loans that National Collegiate owns, totaling more than $12 billion, were originated a decade or more ago by other lenders, then packaged into securities and sold to investors. As the debt changed hands, crucial paperwork documenting the loans' ownership appears to have been lost, according to court filings in a bitter legal fight among parties involved in operating the trusts.

"I won't allow a generation of New Yorkers to get victimized by the very system that was created to help them get ahead," Mr. Schneiderman said in a written statement. The Times's news story is "deeply concerning," he said, but it is "unfortunately consistent with the increasingly cynical and freewheeling culture we've seen take hold across the student loan industry."

He added, "We will conduct a full investigation and will hold the perpetrators of any fraud against our students accountable."

A search of state court records indicates that National Collegiate's trusts have filed at least 600 lawsuits in New York in recent years. Because most debt collection lawsuits are filed in local and county courts, where records are difficult to search, the actual tally is likely to be far larger.

Mr. Schneiderman's office is seeking documents that would establish the trusts' right to collect on the debts being pursued. The attorney general has asked for detailed records on the student loans' chain of title and on the documentation that accompanied every ownership change.

Mr. Schneiderman's subpoenas went out to both National Collegiate and to Transworld Systems, the debt collection company that hired the law firms that have initiated most of the trusts' lawsuits against borrowers.

Transworld did not respond t[o] requests for comment.

Donald Uderitz, the beneficia[l] owner of National Collegiate' trusts, said he had just receive[d] the subpoena and had not yet re[-] viewed it.

"Right now, all I can say is give[n] the issues we know we are dealin[g] with, I'm not surprised and I don['t] expect this to be the last state at torney general to look into this,[ ]Mr. Uderitz said by email.

Mr. Uderitz has said that he ha[s] concerns about the trusts' owner ship paperwork and wants th[e] lawsuits against borrowers t[o] stop until he can more thoroughl[y] investigate the collection prob lems. A continuing legal disput[e] between his company, the Van tage Capital Group, and others in volved in the trusts has prevente[d] him from making any changes t[o] the trusts' operations, he has said

# EXHIBIT B

56207 071624

---

**\* Creditworthy CEL \* Loan Request/Credit Agreement – Signature Page**

NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

**LOAN PROGRAM INFORMATION**

Think Continuing Education Student Loan

Lender: Charter One Bank, N.A.  School: CUNY - JOHN JAY COLLEGE CRIMIN

Loan Amount Requested: $~~25,000~~ *Vb*  Academia Period: 01/2007-05/2007

Deferral Period Margin*: 8  Repayment Period Margin*: 8  Loan Origination Fee Percentage: 10.50
~~15,000 Vb~~
*Variable interest rate equals the LIBOR Index plus the Margin (see paragraph D.2).

**BORROWER INFORMATION (Must be age of majority in state of residence)**

Borrower Name: Prasanna W Goonewardena  Home Address: 247 34a 77 Cres St  Bellerose, NY 11426
Social Security #: ____-1729  Date of Birth: 01/08/1969  Home Telephone: (718) 343-4473
Mobile Telephone: 516 844 4609  E-mail Address: ~~P~~ b01081@yahoo.com
Current Employer: UNEMPLOYED
Current Position: Unemployed (with income)  Years There: 7 Years  Employer Telephone: (718) 343-4473
Years at Previous Employment: 0 Years

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box): ☒ U.S. Citizen  ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Personal Reference Name: Benard Goonewardena  Reference Home Tel #: _____  Work Tel #: _____
Reference Street Address: ████████████
Reference City/State/Zip: ████████████

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement AB.07-08.CLCW.10DC.1106 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this Credit Agreement form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on nor to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**For purposes of the following notices, "you" means the Borrower, not the Lender.**

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Enrollment – FAX TO:** 800-704-9406

Signature of Borrower _Tw Poohlll ardena_  Date _06/25/87_

**AB.07-08.CLCW.10DC.1106**  LENDER COPY
PN03_RF_07-08_CLCW_F_X_GOONEWARDE_A105104984.pdf

TFJCDF

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS                                        FORMAL COMPLAINT
-------------------------------------------------
NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2007-4, A DELAWARE                    PLAINTIFF,
STATUTORY TRUST(S)

          - AGAINST -
PRASANNA GOONEWARDENA
                                        DEFENDANT(S).
-------------------------------------------------

     PLAINTIFF, BY ITS ATTORNEY(S), COMPLAINING OF THE DEFENDANT(S), UPON
INFORMATION AND BELIEF, ALLEGES:
1.  THAT THE DEFENDANT(S) RESIDES IN THE COUNTY IN WHICH THIS ACTION IS
BROUGHT; OR THAT THE DEFENDANT(S) TRANSACTED BUSINESS WITHIN THE COUNTY
IN WHICH THIS ACTION IS BROUGHT IN PERSON OR THROUGH HIS AGENT AND THAT
THE INSTANT CAUSE OF ACTION AROSE OUT OF SAID TRANSACTION
2.  PLAINTIFF IS AUTHORIZED TO PROCEED WITH THIS ACTION.
3.  UPON INFORMATION AND BELIEF DEFENDANT(S) BORROWED MONEY FROM PLAINTIFF OR
PLAINTIFF'S ASSIGNOR PURSUANT TO A CREDIT AGREEMENT.
4.  DEFENDANT(S) HAS DEFAULTED ON SAID AGREEMENT AND $ 25,846.45   IS
NOW DUE, NO PART OF SAID SUM HAS BEEN PAID ALTHOUGH DULY DEMANDED.


5.  DEFENDANT(S) IS IN DEFAULT AND DEMAND FOR PAYMENT HAS BEEN MADE.


6.  PLAINTIFF IS THE ORIGINAL CREDITOR AND IS NOT REQUIRED TO BE LICENSED
BY THE NYC DEPARTMENT OF CONSUMER AFFAIRS.

2ND CAUSE/ACTION:PLAINTIFF STATED AN ACCOUNT TO DEFENDANT WITHOUT OBJECTION
THAT THERE IS NOW DUE PLAINTIFF FROM DEFENDANT(S) THE AMOUNT SET FORTH IN
THE COMPLAINT, NO PART OF WHICH HAS BEEN PAID, ALTHOUGH DULY DEMANDED.

WHEREFORE, PLAINTIFF DEMANDS JUDGMENT AGAINST DEFENDANT(S) FOR THE SUM OF
     25,846.45
TOGETHER WITH THE DISBURSEMENTS OF THIS ACTION

WE ARE DEBT COLLECTORS; ANY                FORSTER & GARBUS LLP
INFORMATION OBTAINED WILL BE USED          ATTORNEY(S) FOR PLAINTIFF
IN ATTEMPTING TO COLLECT THIS DEBT.        60 MOTOR PARKWAY
                                           COMMACK, NY 11725

DATED: THE 21 DAY OF DECEMBER , 2012

RONALD FORSTER  JOEL D. LEIDERMAN  EDWARD C. KLEIN

PURSUANT TO PART 130-1.1-a OF THE RULES OF THE
CHIEF ADMINISTRATOR THIS SIGNATURE APPLIES
TO THE ATTACHED SUMMONS AND COMPLAINT

| | |
|---|---|
| SUPREME COURT OF THE STATE OF NEW YORK | INDEX # *76* |
| COUNTY OF QUEENS | SUMMONS  JAN |

R

--------------------------------------------------

NATIONAL COLLEGIATE STUDENT LOAN        PLAINTIFF'S ADDRESS
TRUST 2007-4, A DELAWARE     PLAINTIFF, 800 BOYLSTON ST FL34
STATUTORY TRUST(S)                     BOSTON, MA 02199

                                              X

      - AGAINST -                  DEFENDANT'S ADDRESSES
PRASANNA GOONEWARDENA           24734A 77TH CRES APT A

                  DEFENDANT(S). BELLEROSE NY 11426-1880

--------------------------------------------------

CONSUMER CREDIT TRANSACTION


THE BASIS OF THE VENUE IS:
     A DEFENDANT RESIDES IN THE COUNTY OF QUEENS
     THE TRANSACTION TOOK PLACE IN THE COUNTY OF QUEENS


TO THE ABOVE NAMED DEFENDANT(S): PRASANNA GOONEWARDENA

YOU ARE HEREBY SUMMONED TO ANSWER THE COMPLAINT IN THIS ACTION AND TO
SERVE A COPY OF YOUR ANSWER ON THE PLAINTIFF'S ATTORNEY(S) WITHIN
20 DAYS AFTER THE SERVICE OF THIS SUMMONS, EXCLUSIVE OF THE DAY OF
SERVICE (OR WITHIN 30 DAYS AFTER THE SERVICE IS COMPLETE IF THIS
SUMMONS IS NOT PERSONALLY DELIVERED TO YOU WITHIN THE STATE OF NEW YORK).



UPON YOUR FAILURE TO ANSWER, JUDGMENT WILL BE TAKEN AGAINST YOU FOR THE
RELIEF DEMANDED IN THE COMPLAINT, TOGETHER WITH THE DISBURSEMENTS OF
THIS ACTION.
DATED THE 21 DAY OF DECEMBER , 2012


                                   FORSTER & GARBUS LLP
     FILE NO.                        ATTORNEY(S) FOR PLAINTIFF
MS70000060673                    60 MOTOR PARKWAY
                                     COMMACK, NY 11725
ORIG ACCT# END IN: 1000             (631) 393-9400

NOTE: THE LAW PROVIDES THAT:
   (A) IF THIS SUMMONS IS SERVED BY ITS DELIVERY TO YOU PERSONALLY WITHIN
THE COUNTY OF QUEENS       YOU MUST APPEAR AND ANSWER WITHIN 20 DAYS AFTER
SUCH SERVICE: OR
   (B) IF THIS SUMMONS IS SERVED BY DELIVERY TO ANY PERSON OTHER THAN YOU
PERSONALLY, OR IS SERVED OUTSIDE THE COUNTY OF QUEENS     , OR BY PUBLI-
CATION, OR BY ANY MEANS OTHER THAN PERSONAL DELIVERY TO YOU WITHIN THE
COUNTY OF QUEENS       YOU ARE ALLOWED 30 DAYS AFTER SERVICE IS COMPLETE
WITHIN WHICH TO APPEAR AND ANSWER.



DEFENDANT'S POB:

# EXHIBIT D



**American Education Services**
P.O. Box 2461  Harrisburg, PA 17105-2461
Toll-free 1-800-233-0557 · TTY: Dial 711
Fax 717-720-3916 · International 717-720-3100
www.aesSuccess.org

DECEMBER 27, 2017

#BWNDHKB
#B895 0655 5212 28L7#
PRASANNA W GOONEWARDENA
24734 77TH CRES # A
BELLEROSE NY  11426

ACCT NUMBER:  5401156917

| THIS LETTER IS FOR YOUR INFORMATION ONLY. |
| --- |

## WHY WE ARE CONTACTING YOU
To provide you with the detailed loan information that was recently requested.

P601395: PS060SMRYA
5401156917 5401156917 MR          0000817362000750



# EXHIBIT E

Prasanna Goonewardena
247-34A 77 Cres
Bellerose, NY 11426

October 5, 2017

Ronald Foster
Forster & Garbus LLP
60 Motor Parkway
Commack, NY 11725

Re: Good faith attempt
    F&G Acct #'s MS70000060673. MS50000060674, MS40000060675, MS70000060672

Mr. Foster:

As per agreement by National Collegiate Student Loan Trust owner Donald Ulderitz and
Consumer Financial Protection Bureau, I demand that all collection activities on the above
accounts be suspended and return the money I paid thus far-$9670.00 within 10 days from
receipt of this letter. The law suits were filed against me fraudulently and therefore, any
agreement I signed is null and void. Moreover, the agreement was signed under duress from
various judges and Mr. Ferraro. I was fraudulently induced into enter into an agreement that was
fraudulently filed in State Supreme court and Civil court.

If I do not hear from you within 10 days from receipt of this good faith attempt, I will take a
million dollar legal action against you, Mark Garbus, Amy Gavlik, Ronald Ferraro and Edward
Klein for violating Civil RICCO 28 U.S.C. §§ 1961 (1) (5)-1968, mail and wire fraud 18 U.S.C.
§§ 1341 & 1343, Judiciary law § 487, fraud, unjust enrichment, negligent misrepresentation,
fraudulent inducement and negligent in Brooklyn federal court . Ronald Ferraro works for a
judge in Nassau Supreme court. This is not looking good for him.

I respectfully ask you to send me a reply within 10 days from receipt of this letter.

Sincerely,

Prasanna Goonewardena

# EXHIBIT F

RONALD FORSTER - Adm. in NY Only
MARK A. GARBUS - Adm. in NY Only
----------------------------------
EDWARD J. DAMSKY - Adm. in NY Only
JOEL D. LEIDERMAN - Adm. in NY Only

Forster & Garbus LLP NYC DCA #2045675

FORSTER & GARBUS LLP
A NEW YORK LAW FIRM
60 MOTOR PARKWAY
P.O. BOX 9030
COMMACK, N.Y. 11725
(631) 393-9400
Toll Free (800) 245-9943
Fax (631) 393-9469

ANNETTE T. ALTMAN - Adm. in NY Only
MICHAEL C. DIGIARO - Adm. in NY & NJ
MICHAEL J. FLORIO - Adm. in NY Only
AMY GAVLIK - Adm. in NY Only
TESS E. GUNTHER - Adm. in NY & CT
VALERIE E. WATTS - Adm. in NY Only

October 16, 2017

Prasanna Goonewardena
247-34A 77th Crescent
Apt A
Bellerose, New York 11426

Re:   F&G Account #'s MS70000060672, MS70000060673, MS50000060674,
MS40000060675

Dear Mr. Goonewardena:

Reference is made to your letter to Mr. Forster of October 5, 2017. We wish to remind you that you executed releases with respect to all of the above accounts in favor of our client and this firm. I enclose copies of the varied settlement agreements and releases. As such, we clearly will not abide by your request for a refund. Certainly, if you cannot respect the terms of the release to which you have agreed, then making a payment to you would apparently not stop you from threatening or commencing litigation in the future.

Should you commence a lawsuit as threatened in your letter of October 5, 2017, it would be our intention to vigorously oppose same and we would consider any such action to be frivolous and harassing, which could subject you to sanctions.

Please further be advised, that if payment is not received pursuant to the terms of the stipulations you are currently paying and you default, we will seek judgment against you.

Please be guided accordingly.

Very truly yours,

Forster & Garbus, LLP.

Joel D. Leiderman, Esq.

JDL/sms

(PLEASE NOTE THAT WE ARE REQUIRED, UNDER FEDERAL LAW, TO ADVISE YOU THAT WE ARE DEBT COLLECTORS AND ANY INFORMATION WE OBTAIN WILL BE USED IN ATTEMPTING TO COLLECT THIS DEBT.)

# EXHIBIT G

P.O. Box 15618
Dept. 926
Wilmington, DE 19850-5618
926.6808.EDGV1

|||||||||||||||||||||||||||||||||||||||||||||||

Calls to or from this company may be monitored
or recorded.

PRASANNA GOONEWARDENA
24734A 77TH CRES
BELLEROSE NY 11426-1880
|..|l..|l.|.|.|.|.|.|..|ll.|.|.|.|.|l...|l.|.|.|.l.|l|

TRANSWORLD SYSTEMS INC.
500 Virginia Dr Suite 514
Ft Washington, PA 19034
800-825-6523

Date: August 8, 2018
Our Account #: 73653592
Creditor: NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2007-2
Balance Due: $16314.62
This Balance is a Sum of Balances from 2 Account(s).
See additional page(s) for account detail.
Notice: See Reverse Side For Important Information.

The creditor, noted above, has placed your defaulted loan(s) with our agency for collection.

The creditor has informed us that this amount is due in full.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute this debt, or any portion thereof, this office will obtain verification of the debt or a copy of a judgment and mail you a copy of such verification or judgment. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector.

Office Hours: Monday through Thursday 8:00am to 9:00pm and Friday 8:00am to 5:00pm (ET).

The account balance will be periodically increased due to the addition of accrued interest, as permitted by applicable law.

Contact Jamie Allen at TRANSWORLD SYSTEMS INC. This collection agency is licensed by the Department of Consumer Affairs of the City of New York; License# 2012412-DCA.

You may also make payment by visiting us on-line at https://payments.tsico.com. Your unique registration code is 7365359219.

PLEASE RETURN THIS PORTION WITH YOUR PAYMENT (MAKE SURE ADDRESS SHOWS THROUGH WINDOW)
----------------------------------------------------------------------------------------

| Our Account # | Balance Due |
|---|---|
| 73653592 | $16314.62 |
| PRASANNA GOONEWARDENA | |
| Payment Amount | ⬇ |

$

Check here if your address has changed and print
your new address in the space provided below.

2 of 2

Make Payment To:

TRANSWORLD SYSTEMS INC.
P.O. BOX 15109
WILMINGTON, DE 198505109

0926 000073653592 1 00813204 1 0000 4

P6808
126

Federal and state law prohibit certain methods of debt collection, and require that we treat you fairly. If you have a complaint about the way we are collecting your debt, please visit our website at https://payments.tsico.com or contact the FTC online at www.ftc.gov; by phone at 1-877-FTC-HELP; or by mail at 600 Pennsylvania Ave., NW, Washington, DC 20580. If you want information about your rights when you are contacted by a debt collector, please contact the FTC online at www.ftc.gov.

| School Name | Creditor's Account # | Cur Int Rate | Default Date | Former Creditor | |
| Lender Name | Principal | Interest | Coll Costs/Chgs | Other | Cur Bal Due |
| N/A | XXXXX1729/002-001000 | 7.74 | 02/03/10 | RBS CITIZENS N.A. | |
| RBS CITIZENS N.A. | $6807.47 | $1324.57 | $0.00 | $0.00 | $8132.04 |
| N/A | XXXXX1729/001-001000 | 7.74 | 02/03/10 | KEYBANK NA | |
| KEYBANK NA | $6841.43 | $1341.15 | $0.00 | $0.00 | $8182.58 |

Total: $16314.62